In re ESTATE of Edmee WINTERMANN, Deceased.

Nellie ANHEUSER (Plaintiff), Respondent,

v.

Ewald L. WINTERMANN, and St. Louis Union Trust Company, Co-Executors of the Estate of Edmee Wintermann, Deceased (Defendants), Appellants.

No. 57418.

Supreme Court of Missouri, Division No. 1.

April 9, 1973.

Tyree C. Derrick, Jules Q. Strong, St. Louis, for respondent.

R. H. McRoberts, Jr., Eric V. Lemon, St. Louis, for appellants; Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

HOLMAN, Presiding Judge.

Plaintiff instituted this action by filing a petition in the probate court pursuant to § 473.357.[1] Therein she alleged that she was the owner of 400 shares of the stock of Anheuser-Busch, Inc., the certificates for which were in the possession of defendants-executors. She sought a judgment that she was the owner thereof, by gift, and a direction that the certificates be delivered to her. The defendants denied the gift and by counterclaim sought a judgment to the effect that the estate was the beneficial owner of all of the stock in the possession of plaintiff which she had received as stock dividends or splits from said 400 shares, which now amount to 3,-384 shares; that a trust be impressed on said shares in favor of defendants, subject only to plaintiff's right to receive the cash dividends during her lifetime. A trial in the probate court resulted in findings and judgment in favor of plaintiff on all issues. Upon appeal by defendants to the circuit court, a trial de novo also resulted in a judgment for plaintiff. Defendants have duly appealed to this court. We have jurisdiction because of the amount in dispute, the notice of appeal having been filed prior to January 1, 1972. Mo.Const. Art. V, § 3, V.A.M.S., § 477.040. We affirm.

---

1. Unless otherwise indicated, all statutory references are to RSMo 1969, V.A.M.S.

Plaintiff was the oldest of the four Anheuser sisters. She had lost her "fortune" in the depression which began in 1929. Most of the time since she has lived with her sister, Dorothy Honig. Whenever necessary Dorothy paid her expenses. The youngest sister Edmee Wintermann, lived nearby. She had married defendant Ewald Wintermann in 1942. It was the second marriage for both, and Edmee had her own estate. All parties agree that in 1945 Edmee decided to transfer some shares of Anheuser-Busch stock to plaintiff so that plaintiff and Lily, another sister, would have the income therefrom. Thirty shares were transferred on December 31, 1945, and another 30 shares on December 24, 1946. In August 1947, the company declared a five-for-one stock split so that plaintiff then owned 300 shares. On December 24, 1947, Edmee made her final assignment of 100 shares to plaintiff. Edmee died in 1968.

It should be mentioned at this point that the main question in this case is whether the above described transfers constituted valid inter vivos gifts. As indicated, there was an unrestricted transfer of the stock on the books of the company. Plaintiff received all stockholder notices and cash dividends. The certificates for all stock dividends and splits were issued in plaintiff's name and (after 1947) were sent to and retained by her. The factual issues relate primarily to Edmee's intent in making the transfers and whether there was a delivery of the certificates to plaintiff. It is the contention of defendants that there was no valid gift; that the stock was transferred so that plaintiff and Lily would get the income but that plaintiff had agreed to make a will transferring the stock back to Edmee at her death.

Plaintiff testified that the only request made in connection with the transfers was that she should give half of the dividend income to Lily; that she had the first two certificates in her possession until the first stock split was announced; that at that time Ewald came to her and suggested that

he take her certificates and exchange them for the 300-share certificate; that she gave them to him but he never brought the new certificate to her; that when she talked with him about it he said it was just as safe in his safe deposit box as it would be in hers; that Edmee never mentioned anything about her giving the stock back and she never received any letter from Edmee setting out the arrangement concerning the stock. Plaintiff also stated that she had given Lily half of the dividend income she had received from the company.

Dorothy and Lily both testified and each of them corroborated plaintiff's testimony in almost every particular. Both of them stated that Edmee had expressed the desire that the stock remain in the Anheuser family.

The principal witness for defendants was Ewald L. Wintermann. He was Edmee's husband and is a co-executor of her estate. He testified that prior to 1945 Edmee gave plaintiff and Lily each $50 per month; that he suggested that instead of the monthly gift she set aside some Anheuser-Busch stock and "let them share the dividends, put it in Nellie's name and divide it with Lily, which they did"; that he heard plaintiff say to Edmee that "I'll see that you get that stock back at my death."

Ewald further testified that at the time of a stock split he was listening on an extension phone when Edmee asked plaintiff to send the stock down to her and, at Dorothy's suggestion, plaintiff refused; that he then suggested to Edmee that she write plaintiff a letter so as to "get this in writing"; that he wrote out a letter and had it typed by Fred Hedzik; that he mailed the original to plaintiff. A copy of the letter reads as follows:

"St. Louis, Mo.
December 21, 1947

"Dear Nellie:

"In as much as I have been giving, both you and Lily, money each month, Ewald has suggested that I set aside 400

shares of Anheuser-Busch stock, and register this stock in your name. It is understood that this stock is not a gift. I have spoken to Mrs. Sibert about this transfer, and these certificates will be held in my safe deposit box, so therefore you will receive the dividends on these 400 shares.

"When you receive these dividends, one half is to be shared with Lily.

"In the event of your death, it is understood that these 400 shares, and any stock dividends thereon, are to be transferred back to me, and as you told me this will be so directed in your will.

"I am going to draw a will in which I will provide that both you and Lily each will receive $200.00 per month, which is more than the above dividends will amount to.

"I hope that you and Lily will enjoy this income for many years to come.

 "With love

"EAW:FLH"

The court sustained plaintiff's objection to the admission of that copy in evidence.

Fred Hedzik testified that he was employed by Ewald in 1947; that he did not remember writing the letter quoted above but it looked like his typing and it looked familiar.

Edmee's will, dated January 29, 1966, was admitted in evidence. One section thereof provided that plaintiff and Lily each receive an income of $200 per month so long as they live. In that connection it should be noted that plaintiff is now 95 years of age and Lily just a few years younger.

The findings and conclusions of the trial court included the following: "Edmee Anheuser Wintermann, prior to her death * * * made an inter vivos gift to her sister, Nellie Anheuser [shares described]. The gift was complete without restraint or restriction, exception or condition. The donor in making the gift surrendered all of her right, title and interest in and to the stock, and therefore, had no control or dominion over the said shares of stock * * *. All notices with respect to the activities of the company and especially of stockholders' meetings were sent to Nellie Anheuser as a stockholder of record at the time of said communications. Nellie Anheuser exercised complete control over said stock without direction or interference, and free of condition or restraint. The donor put the stock in plaintiff's possession and control and when she did, it was without right to revoke the gift and without restriction or condition and with all the rights and privileges of a stockholder and absolute owner. * * * There was no agreement between the donor, Edmee Anheuser Wintermann, and the donee, Nellie Anheuser, to hold the stock in trust, nor was there an agreement requiring the donee to make a will bequeathing the stock to Edmee Anheuser Wintermann or her estate at donee's death."

 At the outset of our consideration of this appeal there are certain applicable rules that should be stated. As a general rule one claiming an inter vivos gift has the burden of proving same by clear and convincing evidence. In re Kies' Estate, 320 S.W.2d 478 (Mo.1959). In a case of this nature it is provided in Rule 73.01(d) that "[t]he appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In quoting the deference rule we are mindful of the limitation to its application by reason of the fact that plaintiff and her two sisters testified by deposition. "The essentials of an inter vivos gift of personal property * * * are: '* * * a present intention to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an ac-

ceptance by the donee, whose ownership takes effect immediately and absolutely.'" Wantuck v. United Savings & Loan Ass'n, 461 S.W.2d 692, 694 (Mo.1971).

In our review of the testimony we find an abundance of evidence—convincing evidence—that plaintiff has carried her burden of proving two of the three elements, i.e., (1) a present intention of the donor to make a gift of the shares, and (2) the acceptance thereof by plaintiff. We see no reason for discussing the evidence in detail but, in arriving at our conclusion, we have considered and are supported by the following: (1) the statements of Edmee concerning the gifts and reasons therefor; (2) the fact that the shares were assigned to plaintiff, transferred on the books of the corporation to her, and certificates issued in her name; (3) the fact that each of these transfers was made near Christmastime and the evidence shows that Edmee followed a custom of giving plaintiff Christmas gifts; (4) Edmee owned all of this stock at the time of the first transfer but divided the gift into three portions made in three different years with the value of each not greatly exceeding the annual federal gift tax exemption of $3,000; and (5) plaintiff was permitted to and did exercise all rights of ownership including retention of certificates for stock dividends and splits without protest from the donor. The testimony of Ewald, which contradicts some of the foregoing facts, was not accepted by the trial judge and we not only defer to his finding in that regard but have independently arrived at the same conclusion.

There remains the question as to whether there was a delivery of the stock. The delivery may be actual, constructive, or symbolical. "[N]o particular form is necessary to effect a delivery. The delivery itself is only intended to evidence the purpose of the grantor to give effect to the instrument, and the law presumes much more in favor of a delivery in cases of voluntary settlements in favor of a wife, child, or near relative than it does in ordinary cases of bargain and sale between strangers." Rumsey v. Otis, 133 Mo. 85, 34 S.W. 551, 553 (1896). And, although there is authority to the contrary, we approve the rule that less proof is required to show delivery as between parties within a family relationship, and that such would apply to a gift between sisters, as in this case.

We have no difficulty in finding a delivery of the first two 30-share certificates (now 300 shares). This because we believe the testimony of plaintiff and Dorothy that plaintiff had those certificates and let Ewald have them in order to get the new certificate which he retained. The certificate for 100 shares requires further consideration because we do not find any direct testimony to the effect that it was ever in the actual possession of plaintiff.

In considering this question we are mindful that § 403.050, RSMo 1949, which was in effect at the time of this transfer, provided that title to shares could be transferred only by delivery of the certificate endorsed, etc. However, we have the view, as indicated in the decisions, that this was intended to apply primarily to commercial transactions and does not restrict the courts in applying the law relating to gifts. See § 403.140 RSMo 1949; Duncan v. Kelly, 435 S.W.2d 29 (Mo.App.1968); In re Kies' Estate, supra, 320 S.W.2d 478 (Mo.1959); East v. Crowdus, 302 F.2d 645 (8th Cir. 1962); Kintzinger v. Millin, 254 Iowa 173, 117 N.W.2d 68 [6–9] (1962).

We rule that there was a constructive delivery to plaintiff of the 100 shares in question. We are supported in that conclusion by the following facts and circumstances: (1) on numerous occasions Edmee told plaintiff and her sisters that she had given the stock to plaintiff; (2) Dorothy and Lily both testified that Edmee said that Ewald would deliver the certificate to plaintiff; (3) Edmee as-

signed the certificate to plaintiff and had a new certificate issued in plaintiff's name, thus completely divesting herself of all rights of beneficial ownership in the stock. This should be considered analogous to the recording of a deed which this court has said is tantamount to delivery, Deer v. King, 30 S.W.2d 980 (Mo.1930); (4) Edmee permitted plaintiff to retain the certificates for all stock dividends and splits; (5) plaintiff received all stockholder notices from the company and exercised all rights of beneficial ownership; and (6) Edmee and plaintiff were sisters and were closely and affectionately associated, thus, as we have said, requiring less proof of delivery than in certain other situations.

Each case of this nature must be decided upon the particular facts appearing therein. For that reason precedents are not of much value in determining the sufficiency of the proof. We have considered all of the cases cited by each side (and many others) but find none involving the precise situation before us. For that reason we have decided not to extend this opinion by a discussion of those cases.

■ The trial court dismissed defendants' counterclaim on the basis that a counterclaim of that nature could not be interposed in response to an action under § 473.357. Defendants have briefed the contention that the court erred in that regard. We have concluded that we need not decide that question. We will assume (but do not decide) that the court had jurisdiction to consider the counterclaim on its merits. Our ruling that there was a valid gift of the 400 shares would preclude defendants from recovering the stock issued for dividends and splits and therefore defendants, in any event, were not prejudiced by the trial court's action.

■ Defendants also assert that the trial court erred in ruling that no resulting trust arose in favor of the estate with respect to the entire 3,784 shares. This point may be disposed of by simply calling attention to the fact that our ruling that Edmee made a valid unrestricted gift of the 400 shares would bar any finding that a resulting trust was created under the facts as we have found them to be.

■ Eleven days after the trial was concluded defendants filed a motion asking leave to amend their answer in order to assert the affirmative defenses of the 5-year statute of limitation (§ 516.120) and laches. At the time the decision was entered the trial court permitted the amendment but ruled adversely to defendants thereon. The question arises as to whether the court erred in permitting the amendment, but we need not decide that question because it is our view that, in any event, the defendants cannot prevail on those defenses under the facts here presented. Plaintiff sustained no injury or damage by reason of the fact that either Edmee or Ewald had possession of these certificates. She received all cash and stock dividends and was permitted to assert all stockholder's rights of ownership. When she talked with Ewald about his retention of the certificates he indicated he was holding them for safekeeping. Under the facts of this case we rule that plaintiff's claim for relief did not accrue within the meaning of §§ 516.100 and 516.120 until she demanded that defendants deliver the certificates to her (shortly before petition was filed) and they refused. No point is here raised concerning the plea of laches.

■ There is no merit in defendants' claim that the trial court erred in ruling that there was no adverse possession of the stock certificates. In that regard the trial court found that "[t]here was no adverse possession nor any dispute with respect to the ownership during the lifetime of the donor, Edmee Anheuser Wintermann, and not until the demand by the plaintiff on the defendants for the return of said certificates was there any question or dispute of the ownership of the stock." We agree with that finding.

Finally, defendants contend that the trial court erred in refusing to admit the copy of the letter of December 21, 1947, into evidence. It will be recalled that Ewald testified that he wrote the letter in longhand, had his secretary type it, and then mailed it himself. Plaintiff testified that she did not receive the letter, and her sisters testified that they knew of no agreement such as outlined in the copy. There are a number of matters concerning the letter and Ewald's testimony in regard to it that challenge our attention. He stated that the letter was prepared because plaintiff had refused to deliver a certificate for a stock split to Edmee. However, the only split that had occurred at that time was the preceding August and that certificate was already in the hands of the Wintermanns. Also, the copy refers to 400 shares and plaintiff only had 300 shares on that date. It should also. be noted that Ewald never testified that Edmee signed the letter after he had it typed.

The evidence was that the original of the letter was not received and not answered and, as stated, there was no testimony that it was signed by Edmee or that the envelope in which it was mailed had the proper stamp affixed thereon. That being the situation we think the copy was properly excluded upon those grounds without considering the contention that it was self-serving. See Darby v. Northwestern Mut. Life Ins. Co., 264 S.W. 372 [6] (Mo. 1924), and United Factories v. Brigham, 117 S.W.2d 662 [3] (Mo.App.1938). Moreover, even if we were to assume that the copy was admissible, our findings and judgment would be the same because its contents are largely a restatement of Ewald's verbal testimony which neither the trial court nor this court has found to be credible.

Judgment affirmed.

All of the Judges concur.